### EXPRESS PUB. CO. v. ORSBORN.

(Court of Civil Appeals of Texas. San Antonio. Nov. 6, 1912. Rehearing Denied Dec. 4, 1912.)

1. LIBEL AND SLANDER (§ 123*)—QUESTIONS FOR JURY—IDENTITY OF PERSON DEFAMED.

Defendant published in its newspaper that a negro returned to his home at 117 Eda avenue to find his sister chloroformed, gagged, and the house robbed. In a subsequent issue it published that plaintiff was gagged and beaten into unconsciousness at the home of her brother-in-

law at 117 N. Eda street. Plaintiff was a white woman. Eda street was sometimes called Eda avenue; and it did not appear that there was any such avenue as Eda avenue, or that any similar attack had been made on a negress in a negro home on such avenue. *Held* that, considering the two articles together, it was a question for the jury whether the first article referred to plaintiff, although it mentioned no names.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

2. LIBEL AND SLANDER (§ 21*)—PERSONS ENTITLED TO SUE.

To justify a recovery for libel, it is not necessary that plaintiff should be named, if pointed out by circumstances, or ascertainable from the words used.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 103; Dec. Dig. § 21.*]

3. LIBEL AND SLANDER (§ 21*)—PERSONS ENTITLED TO SUE.

To justify a recovery for libel, it is not necessary that all the world should understand who the person defamed was, if those knowing plaintiff can discern that she was meant.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 103; Dec. Dig. § 21.*]

4. LIBEL AND SLANDER (§ 101*)—EVIDENCE—BURDEN OF PROOF.

The burden is on a party suing for libel to prove that the libel was directed at him.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 273–280; Dec. Dig. § 101.*]

5. LIBEL AND SLANDER (§ 123*)—QUESTIONS FOR JURY—IDENTITY OF PERSON DEFAMED.

Whether a libel was directed at plaintiff is a question of fact to be determined by the jury.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Ida Mae Orsborn against the Express Publishing Company. Judgment for plaintiff, and defendant appeals. Affirmed.

A. S. Coke, of Dallas, and Templeton, Brooks, Napier & Ogden, of San Antonio, for appellant. E. G. Seuter and Carden, Starling, Carden & Hemphill, all of Dallas, for appellee.

FLY, J. This is a suit for damages, alleged to have resulted from the publication of certain articles by appellant, instituted by N. G. Orsborn, as next friend of Ida Mae Orsborn, who, after the suit was begun, married R. T. Donaldson, who by amendment joined his wife in the suit. A trial by jury resulted in a verdict and judgment in favor of appellee for $500.

In the issue of the Daily Express, a newspaper published in the city of San Antonio, of date July 7, 1910, appeared the following article:

"Girl is Gagged and Robbed.

"Negress Claims Two Mexicans Entered Her Home and Stole a Ring.

"A hurry call came to police headquarters last night at 11 o'clock from 117 Eda avenue,

the home of a negro, who returned home, as he said, to find his sister chloroformed, gagged and the house robbed.

"Patrolmen Henderson and Harrison were sent to the place. They found the girl had been gagged with a towel, but there was no evidence of the use of chloroform, and the only thing missing was a finger ring, which she asserts two Mexicans, her assailants, took from her finger.

"Detectives will be put upon the case this morning."

Following that publication, the succeeding article was published in the Daily Express of July 9, 1910, and also in the semiweekly of the same paper:

"Robbers Very Bold.

Enter House, Gag Woman and Beat Her to Insensibility.

"They Strike a Child to Silence Its Cries But It Cries Louder and Awakens Other Members of the Household. Men Escape.

"Gagged with a pillow and beaten into unconsciousness with the butt end of a revolver by two men, said to be Mexicans, who later ransacked her room, was the experience of Miss Ida Mae Orsborn at the home of her brother-in-law, J. L. Clapp, 117 North Eda street, early Thursday morning. The police are at work on the case but have made no arrests. Mr. Clapp gives the following account of the assault:

"'My sister-in-law was awakened about midnight just as two men entered her room by the front window. Before she could give the alarm the men caught and gagged her. Then one of the men dragged her by her hair from the bed and attempted to throw her out of the window, but she resisted so vigorously that the man struck her over the head with a pistol, rendering her unconscious, and left her lying right in the open window.

"'My little child about one year old, who was sleeping with my sister, was awakened by the confusion and began to cry. One of the men hit the little child to quiet it and made it cry louder, which awakened my wife and me. We were sleeping in a hallway not far away. The men evidently heard us moving and jumped out of the window. I saw them leap over the front fence as I entered the room. Miss Orsborn was lying unconscious with her body across the window sill. I at once summoned Dr. Edward Calvin and notified the police.'

"Examination showed that the robbers had taken nothing but a finger ring, which was taken off Miss Orsborn's finger. The police have a good description of the men, given them by Miss Orsborn, who is positive she can identify her assailants.

"Miss Orsborn was so overcome by the shock and the blow on her head that she was unable to give a coherent account of the assault until the next day. The physicians say that she is now out of danger. The baby has several bruises where it was struck."

The evidence showed that appellee was attacked in the manner mentioned in the publications, on the night of July 6, 1910, while sleeping in the home of her sister and brother-in-law at 117 North Eda street, in San Antonio, Tex. Appellee and her family are whites, and she was greatly mortified and humiliated by the publication that she was a negress. There was evidence tending to show that Eda street was also called Eda avenue.

[1] The only contention by appellant is that the court should have instructed a verdict for appellant, because it was not shown that the libelous article applied to appellee, and could not so have been construed by the readers of the paper. The two articles were properly considered together; and it then became a question of fact, to be determined by the jury, as to whether the person spoken of in the first publication was the one more minutely and accurately described in the second. That issue was clearly presented to the jury, and was answered in favor of appellee. There was evidence to sustain that finding. It was testified that Eda street was known as Eda avenue; that appellee was attacked and gagged at 117 North Eda street under similar circumstances mentioned in the first publication. There was no evidence of a similar attack having been made on a negress in a negro home on Eda avenue, nor that there was such an avenue in San Antonio. The two articles, when read together, lead inevitably and surely to the conclusion that both refer to the same person. Houston Printing Co. v. Moulden, 15 Tex. Civ. App. 574, 41 S. W. 381.

[2, 3] As is well said in the case cited: "It was not necessary to make the article published libelous that plaintiff should have been named, if it was pointed out by circumstances. * * * It is only necessary that the words refer to some person ascertainable from the words used." It was not necessary that all the world should understand who the person defamed was. It is sufficient if those who know the plaintiff can discern that she was the person meant. Newell on Slander and Libel, p. 767.

[4, 5] The case of Boone v. Herald News Co., 27 Tex. Civ. App. 546, 66 S. W. 313, decided by this court and cited by appellant, holds that the burden was on the plaintiff in a libel suit to prove that the libel was directed at him, and that it was a question of fact to be determined by a jury. So we hold in this case; and, as in that, we hold that there is evidence to sustain the verdict of the jury, and it will not be disturbed.

The judgment is affirmed.